Jan FINNEY, Plaintiff–Respondent,

v.

NATIONAL HEALTHCARE CORP, d/b/a Joplin Healthcare Center, NHI of Joplin, LLC, d/b/a Joplin Healthcare Center, National Health Investors, Inc., d/b/a Joplin Healthcare CTR, Defendants–Appellants.

No. 26971.

Missouri Court of Appeals,
Southern District,
Division One.

April 20, 2006.

Motion for Rehearing or Transfer
Denied May 12, 2006.

Application for Transfer Denied
June 30, 2006.

Stephen M. Strum, Veronica, Armouti, Stacey George Sifton, for appellants.

Michelle Boehm O'Neal, Edward J. Hershewe, for respondent.

NANCY STEFFEN RAHMEYER,
Presiding Judge.

Jane Franano ("Decedent") was admitted into a nursing home, Joplin Healthcare Center, on June 5, 2002, when her granddaughter, Theresa Newton, executed a contract on behalf of Decedent for nursing home services. The contract between Decedent and Joplin Healthcare Center included a provision for arbitrating disputes between them. On July 2, 2003, Jan Finney ("Respondent"), Decedent's daughter, who was not a party to the admission contract nor was she a signatory on the contract, brought suit pursuant to section 537.080 [1] against National Healthcare Corporation d/b/a Joplin Healthcare Center, NHI of Joplin, LLC d/b/a Joplin Healthcare Center and National Health Investors, Inc. d/b/a Joplin Healthcare Center (collectively "Appellants") for the wrongful death of her mother. Nearly two years after the suit was filed, Appellants filed a motion requesting arbitration be ordered.

The trial court found no cases precisely on point but denied the motion to compel arbitration for the following reasons:

First, defendants cite no case supporting the proposition the Missouri arbitration statute is preempted by the Federal Act in a tort action created by statute, e.g. the wrongful death statute.

Second, no case authority is cited for the proposition such an action involves interstate commerce as claimed by defendants and the court finds no basis to conclude interstate commerce is present. Absent such authority, the court finds the Missouri act is not preempted by the Federal statute, and that the Missouri act controls if there is compliance with its provisions.

Third, the artibration [sic] clause does not contain the mandatory statutory warning required by Secton [sic] 435.465.2 RSMo., to-wit, "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES[.]" Because there is no such warning the binding arbitration clause is not enforceable.

With the trial court's denial of Appellants' motion to compel arbitration, this appeal was commenced. We affirm. While we agree with the trial court that there is no Missouri case directly on point, in affirming the judgment we simply do not address the court's determinations regarding the validity of this arbitration clause under the Missouri Uniform Arbitration Act ("Missouri Act") or the Federal Arbitration Act ("Federal Act"). Our resolution of this matter is based upon the enforceability of this contract as to Respondent and does not address the supposition that a wrongful death action brought by a signatory to the contract may be the subject of an arbitration clause. We simply find that Respondent was not a party to this contract and not bound by its provisions regardless of any decision regarding the enforceability of the arbitration clause in this contract.

An appellate court's review of a trial court's denial of a motion to compel arbitration is *de novo*. *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003). Although the reviewing court should consider the record below, deference should not be given to the trial court's conclusions. *Kinzenbaw v. Dir. of Revenue*, 62 S.W.3d 49, 52 (Mo. banc 2001). Both the Missouri Act, section 435.440.1, and the Federal Act, 9 U.S.C. § 16(a)(1)(B),[2] provide for an im-

1. All references to statutes are to RSMo 2000, unless otherwise specified.

2. All federal statutory references are to the United States Code 1999, unless otherwise indicated.

mediate appeal of an order denying a motion to compel arbitration. *Triarch Industries, Inc. v. Crabtree,* 158 S.W.3d 772, 774 (Mo. banc 2005). We use contract principles in our analysis because an agreement to arbitrate a dispute is a contract. *Prickett v. Lucy Lee Hosp., Inc.,* 986 S.W.2d 947, 948 (Mo.App. S.D.1999). Determination whether the parties contractually agreed to arbitration must occur before the parties are forced to submit to arbitration. *Korte Const. Co. v. Deaconess Manor Ass'n,* 927 S.W.2d 395, 398 (Mo.App. E.D.1996). A party cannot be compelled to arbitration unless they have agreed to do so. *Dunn,* 112 S.W.3d at 435.

■ Appellants bring four points of error, all of which argue the effects of the Missouri Act or Federal Act on a wrongful death suit brought under a valid contract. Appellants rely upon the premise that a valid contract exists between Respondent and Appellants which makes the arbitration clause contained within the contract binding upon Respondent. The premise is faulty. For the reasons set forth herein, we disagree that the contract for nursing home services bound Respondent, as a beneficiary, pursuant to section 537.080, to the arbitration clause contained in the nursing home contract.

There is no question that a contract did not exist between Respondent and Appellants. To bypass the necessity of a valid contract between Respondent and Appellants in which Respondent agreed to arbitrate any disputes, Appellants argue that Respondent is bound by the contract signed on Decedent's behalf. In other words, Appellants claim that but for Decedent's death, Respondent would not have a cause of action and, therefore, she stands in the shoes of Decedent. To reach the conclusion that Respondent stands in Decedent's shoes as a party to the contract, the cause of action for wrongful death must belong to Decedent. That is not a correct statement of the law.

■ The wrongful death claim does not belong to the deceased or even to a decedent's estate. *Campbell v. Callow,* 876 S.W.2d 25, 26 (Mo.App. S.D.1994). " 'The wrongful death act creates a new cause of action where none existed at common law and did not revive a cause of action belonging to the deceased.' " *O'Grady v. Brown,* 654 S.W.2d 904, 910 (Mo. banc 1983) (quoting *State ex rel. Jewish Hospital v. Buder,* 540 S.W.2d 100, 104 (Mo.App.St.L.D. 1976)). A wrongful death action is not a transmitted right nor a survival right but is created and vested in the statutorily designated survivors at the moment of death. *Id.* at 910. The damages under section 537.080 are different than the damages Decedent would have been entitled to in a personal injury action against Appellants. Under Missouri's wrongful death statute, the party or parties may receive "pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death." Section 537.090.

Appellants cite to *Dunn,* 112 S.W.3d 421 (Mo. banc 2003), for the proposition that Missouri's wrongful death statute is preempted by the Federal Act. *Dunn* involved the applicability of a Federal Act arbitration agreement in a contract dispute in which the trial court refused to enforce the arbitration clause because there was an underlying equitable mechanic's lien action in progress. *Id.* at 430. It involved litigation between a business and the city of Sugar Creek, Missouri, over the construction of a new cement plant. *Id.* at 426–27. The parties agreed to a "broad" arbitration clause. *Id.* at 428. Litigation

ensued between all of the parties, including the city, the construction company, a guarantor that had signed a contract guarantee, and its parent company. *Id.* at 427. The court specifically found, as between the parties to the initial contract, that all of the claims in the petition arose out of or related to the construction contract, including allegations of extra work or additions or changes to the scope of work under the construction contract. *Id.* at 428. The court, using contract principles, analyzed the contract and subsequent change orders and found the parties agreed to arbitrate any disputes arising out of the contract. *Id.* at 428–30.

It is interesting to note that the court in *Dunn* found that one specific guarantor, a guarantor on a guaranty that did not incorporate the arbitration provision of the construction contract and who was not a signatory to a contract containing an arbitration agreement, was not bound by the arbitration clause. *Id.* at 436. The court noted that a guarantor, who is not a signatory to a contract containing an arbitration clause, is generally not bound by the arbitration clause unless the arbitration agreement is incorporated into the guaranty or performance bond. *Id.* at 435. The court reasoned that the guaranty agreement was "a collateral agreement for another's undertaking and [was] an independent contract that impos[ed] different responsibilities from those imposed in the construction contract." *Id.* at 436–37. Clearly, even though a business relationship was involved in *Dunn*, not all the parties peripherally involved in the litigation were bound by the arbitration clause of the initial contract. While the guaranty agreement was connected to the initial contract in that the guarantor would not be liable if no liability attached under any of the claims under the contract, the court held that a party in an independent action on the guaranty was not bound by the arbitration clause. *Id.*

Similarly, in *Greenpoint Credit, L.L.C. v. Reynolds*, 151 S.W.3d 868 (Mo.App. S.D. 2004), this Court held that Mary Nations, who was not a signatory to a contract, an agent of the signing party, or a third-party beneficiary, was not bound by an arbitration agreement. *Id.* at 873–74. Noting that arbitration is a matter of contract, absent an agreement to arbitrate, a person cannot be compelled to do so. *Id.* at 873. GreenPoint Credit contended a manufactured home, which was the subject of litigation, was purchased for the benefit of Mary Nations, who possessed the manufactured home at the time of an initial replevin action. *Id.* at 871. We found no contract under a third-party beneficiary theory, even though the purchaser of the manufactured home was bound by the contracts' provision for arbitration, because the contract expressed no intent to benefit Ms. Nations individually or as a member of an identifiable class. *Id.*

Furthermore, the policy reasons behind *Dunn*, *Greenpoint Credit*, and the myriad of other cases in which arbitration clauses were enforced do not apply to this wrongful death action. The courts frequently and consistently cite to the business advantages of arbitration and the need for less disruption of ongoing and future business dealings among the parties. As explained in *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), the legislative history of the Federal Act had the needs of consumers in mind:

> "The advantages of arbitration are many: it is usually cheaper and faster than litigation; it can have simpler procedural and evidentiary rules; it normally minimizes hostility and is less disruptive of ongoing and future business dealings among the parties; it is often more flexible in regard to scheduling of

times and places of hearings and discovery devices ..."

*Id.* at 280 (quoting H.R.Rep. No. 97–542, p. 13 (1982)). The goal of less disruption of ongoing and future business dealings among the parties has no application in this wrongful death suit brought by the statutory representative against a nursing home.

We find that Respondent, a nonparty to the initial agreement containing an arbitration clause, is not bound by the clause in her independent cause of action for the wrongful death. The judgment is affirmed.

PARRISH and BARNES, Senior JJ., concur.