NETCO, INC., et al., Respondents,

v.

Jimmy V. DUNN, et al., Appellants.

No. SC 86855.

Supreme Court of Missouri,
En Banc.

May 2, 2006.

As Modified on Denial of Rehearing
June 30, 2006.

Gaspare J. Bono, Ray M. Aragon, Washington, DC, Larry K. Bratvold, Robert B. Hankins, Springfield, MO, for appellants.

R. Dan Boulware, R. Todd Ehlert, Sharon Kennedy, St. Joseph, MO, for respondents.

STEPHEN N. LIMBAUGH, JR., Judge.

Appellants seek reversal of the judgment of the circuit court overruling their motions to compel arbitration and stay litigation. After opinion by the Court of Appeals, Southern District, this Court granted transfer. Mo. Const. art. V, § 10. The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded.[1]

I. Facts and Procedural History

This case concerns the business relationships between respondents and appellants arising from their participation in Pro Net Global Association, Inc. (Pro Net), a network of businesses engaged in the sale and distribution of Amway-related business support materials (BSMs). Respondents are Netco, Inc. (Netco) and Schmitz & Associates, Inc. (Schmitz Associates), both owned by Charles and Kim Schmitz, though the Schmitzes, personally, are not parties. The eleven appellants are: Jimmy V. Dunn (Dunn); Jimmy V. Dunn & Associates, Inc. (Dunn Associates); Harold Gooch, Jr. (Gooch); Gooch Support Systems, Inc. (Gooch Systems); Gooch Enterprises, Inc. (Gooch Enterprises); William Childers (Childers); TNT, Inc. (TNT); Jim Evans (Evans); J.L. Evans & Associates, Inc. (Evans Associates); Pro Net; and Global Support Services, Inc. (Global). As best as can be discerned, appellants are all Amway Corporation (Amway) distributors, Amway related businesses, or their respective principals.

Amway is not a party in this case, but the questions raised require a brief explanation of Amway's business practices as they relate to the parties that are involved. Amway is a multi-level marketing corporation consisting of a network of independent distributors structured in a pyramid-like hierarchy. As part of Amway's standard

1. A companion case involving most of the same issues, *Nitro Distribution, Inc., et al. v. Jimmy V. Dunn,* et al., 194 S.W.3d 339 (Mo. banc 2006) (No. SC86854), is also decided this date.

distributorship agreement, there are "Rules of Conduct" that include a mandatory arbitration clause requiring Amway distributors to submit any dispute to arbitration through JAMS/Endispute, Inc., an independent arbitration entity.

As a method of improving sales, Amway produces and distributes motivational products called "tools" and "functions" aimed at training and motivating distributors. "Tools" are audiotapes, videotapes and published materials, and "functions" are seminars, rallies and conventions. Together, the tools and functions are commonly referred to as BSMs. A number of other businesses affiliated with Amway distributors sell their own Amway-related BSMs, though Amway distributors themselves are prohibited from doing so under the Rules of Conduct. As used in the Amway corporate culture, an Amway "organization" is a term of art for the conglomeration of an Amway distributorship, its owner(s), and their independent tools and functions businesses.

Pro Net was formed in 1998 to "facilitate the sale of Amway-related BSMs to its members," apparently as a kind of clearinghouse. Those wishing to join Pro Net were required to submit applications mandating compliance with Pro Net's "Terms and Conditions." This not only required members to abide by Amway's Rules of Conduct, but also required members to submit any dispute to arbitration under a separate arbitration clause in which arbitrations were to be administered by the American Arbitration Association.

The Schmitzes formed plaintiff Netco in 1990 to operate their Amway distributorship and to operate a tools business for the support of the distributorship. In 1998, Charlie Schmitz submitted a Pro Net membership application on behalf of Netco, but Schmitz altered the terms of the application relating to Netco's ability to distribute BSMs from supplier or manufacturers. The result, according to Schmitz, was that Pro Net rejected the application, and for that reason Netco never became a member of Pro Net and cannot be bound by the Pro Net arbitration clause. According to appellants, on the other hand, the application was accepted, or at least Netco is estopped from claiming that it was not accepted and, as a result, Netco is bound by the Pro Net arbitration clause.

The Schmitzes also own Schmitz Associates, which is engaged solely in the functions business. Neither Schmitz, nor any officer or agent of Schmitz Associates signed a Pro Net membership application on behalf of Schmitz Associates.

In 2000, Netco and Schmitz Associates filed lawsuits alleging, *inter alia*, that appellants were involved in a conspiracy to misappropriate respondents' businesses. Appellants—some, but not all, of whom are members of Pro Net—filed a motion to compel arbitration under Pro Net's Terms and Conditions and Amway's Rules of Conduct. After considerable discovery, the parties submitted a voluminous amount of evidence to the motion court consisting of more than 4,000 pages of documents, affidavits, deposition transcripts and other materials, and after an evidentiary hearing and extended argument on the matter, the court overruled the motion. This appeal followed, as authorized under the Missouri Uniform Arbitration Act (MUAA), § 435.440, RSMo 2000.

## II. Analysis

 When faced with a motion to compel arbitration, the motion court must determine whether a valid arbitration agreement exists and, if so, whether the specific dispute falls within the scope of the arbitration agreement. *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 427–28 (Mo. banc 2003). In

making these determinations, the court should apply the usual rules of state contract law and canons of contract interpretation. *Id.* at 428. Appellate review is *de novo. Id.*

### A. Schmitz Associates

Appellants seek to compel Schmitz Associates to arbitrate its claims under both the Amway Rules of Conduct and the Pro Net Terms and Conditions, despite the fact that Schmitz Associates was not a signatory to the Amway distributorship agreement nor the Pro Net membership agreement. Though appellants offer several theories in support—third-party beneficiary, estoppel, agency and an alter ego-like argument—none is persuasive.

■ To be bound as a third-party beneficiary, the terms of the contract must clearly express an intent to benefit that party or an identifiable class of which the party is a member. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 301 (Mo. banc 1993). In cases where the contract lacks an express declaration of that intent, there is a strong presumption that the third party is not a beneficiary and that the parties contracted to benefit only themselves. *State ex rel. William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d 134, 141 (Mo. banc 1987). Furthermore, a mere incidental benefit to the third party is insufficient to bind that party. *Id.* at 140.

■ Here, neither the Amway distributorship agreement nor the Pro Net agreement express any intent to benefit Schmitz Associates, and any benefits actually obtained from the agreement were merely incidental. Although appellants cite Schmitz Associates' acknowledgment that "it relied on and profited from Netco's Amway relationship, a relationship predicated on the Amway Rules of Conduct and Netco's status as an Amway distributor,"

the mere fact that Schmitz Associates had a mutually beneficial relationship with Netco does not make Schmitz Associates a third-party beneficiary. Schmitz Associates' reliance and profits from that relationship are the kind of insufficient incidental benefits to which the rule refers. Thus, because Schmitz Associates is not a third-party beneficiary to the agreements, it cannot be bound to the arbitration clauses in those agreements.

■ The equitable estoppel argument, under both the Amway agreement and the Pro Net agreement, is that Schmitz Associates has asserted rights under those agreements in bringing this lawsuit, so it cannot now disavow the obligations that the agreements impose and, in particular, the obligation to arbitrate the claims. However, a close reading of the petition shows that Schmitz Associates is not seeking to enforce any provision in the Amway or Pro Net agreements. Appellants are being sued, instead, under conspiracy theories, not because they breached any contractual term.

■ Appellants next claim that Schmitz Associates is bound to arbitrate under the Amway distributorship agreement (though not under the Pro Net agreement) as an agent of Charlie and Kim Schmitz. In support, appellants cite *Byrd v. Sprint Communications Co., L.P.*, 931 S.W.2d 810, 815 (Mo.App.1996), for the proposition that "non-signatory agents [are] bound by arbitration agreements signed by their principals." In this Court's view, however, *Byrd* was wrongly decided. Under hornbook rules of agency, it is the principal that can be bound by the signature of the agent, not the agent that can be bound by the signature of the principal. This is so because the principal can control the conduct of the agent, which is the essence of the agency relationship. *State ex rel. Bunting v. Koehr*, 865 S.W.2d

351, 353 (Mo. banc 1993). It is not the other way around, that the agent can control the principal. Otherwise the principal would be the agent for the agent. Thus, without the benefit of *Byrd*, the agency theory is to no avail, and the rule controls that "[a] party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." *Dunn*, 112 S.W.3d at 436. To the extent it is to the contrary, *Byrd* is overruled.

Appellants alter ego-like argument is that Schmitz Associates should be bound under the Pro Net agreement because Schmitz Associates is part of the Schmitz "organization" and the Schmitz organization, rather than Netco alone, was admitted to membership in Pro Net. Again, however, Schmitz Associates was not a signatory to the Pro Net agreement. The Schmitz "organization," on the other hand, cannot bind Schmitz Associates because the "organization" has no legal significance. Apparently, appellants would have this Court disregard Schmitz Associates' status as a separate and independent corporation, but the only way to achieve that result is to pierce the corporate veil. That remedy, however, in the context of the issues presented here, is only available where outside control of the corporation has been used "to commit fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or [a] dishonest and unjust act...." *66, Inc. v. Crestwood Commons Redev. Corp.*, 998 S.W.2d 32, 40 (Mo. banc 1999). Suffice it to say that appellants have neither pled nor proven this element. Absent that proof, Schmitz Associates is not bound to arbitrate under the alter ego theory.

B. Scope of Amway Agreement

█ Unlike Schmitz Associates, Netco is bound to abide by the Amway Rules of Conduct because it is a signatory to an Amway distributorship agreement. But even assuming that Schmitz Associates is also bound, Netco and Schmitz Associates contend that the scope of the arbitration agreement does not cover the disputes that are the subject of their petition against appellants. This Court agrees.

The Amway arbitration clause states:

[T]he parties are required to submit any remaining claim(s) arising out of or relating to their Amway Distributorship, the Amway Sales and Marketing Plan, or the Amway Rules of Conduct (including any claim against another Amway distributor, or any such distributor's officers, directors, agents, or employees or against Amway Corporation or any of its officers, directors, agents, or employees) to binding arbitration in accordance with the Amway/ADA Arbitration Rules.

This is not a suit against Amway. Nor are Netco and Schmitz Associates' claims brought pursuant to Netco's Amway distributorship. Nor do Netco and Schmitz Associates make any allegation pertaining to the Amway Sales and Marketing Plan. Nor do they allege that appellants violated the Amway Rules of Conduct or any other part of the Amway agreement. And in that regard, the petition expressly states, "This action is not predicated upon the Amway Rules (since the BSMs industry is not a party of the Amway business), nor does it seek the enforcement of any such Rules." Instead, the subject and entire focus of the lawsuit is that appellants allegedly conspired to misappropriate Netco and Schmitz Associates' BSM businesses. According to Amway's own documents, in order to avoid antitrust concerns, BSM businesses are organized in and operate in an industry entirely independent of Amway. And, in fact, Amway promulgated and distributed a separate BSM arbitration agreement for use by independent BSM businesses, in lieu of the arbitration clause in the Amway Rules of Conduct.

Although this Court is mindful of the many cases holding that the scope of arbitration agreements is to be liberally construed, the Amway clause in this case is clear on its face and cannot be stretched to cover the lawsuit herein.

### C. Netco and Pro Net

■ Appellants contend that Netco is bound to arbitrate under the arbitration clause in Pro Net's Terms and Conditions because the Schmitzes signed and submitted a Pro Net application. To the contrary, Netco contends that it never became a member of Pro Net because Pro Net rejected Netco's membership application after Charlie Schmitz, Netco's president, altered the terms of the application. Whether the altered membership application constituted a counter-offer, and whether that counter-offer was then accepted by Pro Net, is problematic both from a factual and legal standpoint. Without deciding these questions, however, this Court holds as a matter of law that Netco was otherwise estopped from denying membership in Pro Net; thus, it is bound to arbitrate under the Pro Net arbitration clause.

■ From a close review of the record, it is clear that Netco received benefits of Pro Net membership. A party may be estopped from questioning the existence, validity and effect of a contract by accepting the benefits of that contract. *Dunn,* 112 S.W.3d at 437. This is because of the equitable principle that a party "should not be allowed to assume the inconsistent position of affirming a contract in part by accepting or claiming its benefits, and disaffirming it in part by repudiating or avoiding its obligations, or burdens." *Dubail v. Medical West Bldg. Corp.,* 372 S.W.2d 128, 132 (Mo.1963).

By the Schmitzes' own admission, "Global's records established that Netco continued to order BSMs well into 1999" and that it ordered more than 54,000 BSMs through Global during that time. Because Netco indisputably purchased BSMs through Global rather than Pro Net, Netco contends that these purchases were not a benefit of Pro Net membership and, further, that anyone could purchase from Global, regardless of Pro Net membership. However, this argument is refuted in Netco's petition, which alleged that Netco's ability to purchase BSMs through Global *was* a benefit of Pro Net membership. In fact, one of Netco's primary claims is that it was pressured to join Pro Net because it would otherwise be prohibited from purchasing BSMs through Global. According to Netco, distributors who "pulled out of Pro Net" were "cut off by Global" and Pro Net's president instructed Global not to supply BSMs to distributors who abandoned Pro Net. Netco also alleges that because of defendants' conspiracy, a distributor "either purchased his BSMs from Defendants or he was done." Simply stated, respondents' suggestion on appeal that anyone could purchase through Global is wholly irreconcilable with the allegations in the petition. By purchasing BSMs through Global and by conceding that those purchases were a benefit from Pro Net membership, Netco is estopped to deny that it is bound by the terms of Pro Net membership.

### D. Appellants' Standing to Compel Arbitration

■ This Court's holding that Netco is bound to arbitrate under the Pro Net arbitration clause is complicated by the fact that not all of the eleven appellants are members of Pro Net so as to have standing to compel arbitration. Indeed, Netco argues, for one reason or another, that none of the eleven appellants are members of Pro Net. However, Pro Net itself can compel arbitration under the express

language of the Pro Net Terms and Conditions. In addition, three of the appellants—Gooch, Childers and Dunn—personally signed the Pro Net membership application. Although Netco claims that Gooch and Childers signed only as "founding" members and that only "regular" members can avail themselves of the Pro Net arbitration clause, they did in fact sign the Pro Net membership application, were admitted to membership and, thus, can compel arbitration. Unlike Schmitz, however, these individuals did not sign on behalf of their distributorships, Gooch Systems and Gooch Enterprises, TNT, and Dunn Associates, respectively and, therefore, these parties cannot compel arbitration. The same holds true for non-signatories Global, Evans, and Evans Associates.

 Although appellants correctly state that a non-signatory may, in some instances, compel a signatory to arbitrate under the theory that the plaintiff/signatory is estopped from refusing to arbitrate, that is not the case here. The estoppel theory in this context is most often applied in cases where a plaintiff alleges that a defendant is liable under the terms of a contract, even though the defendant was a non-signatory to the contract. These allegations might be made, for instance, in cases where the defendant itself is estopped from denying liability under the contract, or where defendant is a third-party beneficiary, or in cases where the defendant/non-signatory was an agent or alter ego of a signatory.[2]

In a case frequently cited on this issue, the Seventh Circuit explained the rule as follows:

[I]t would be manifestly inequitable to permit [plaintiff] to both claim that [the

non-signatory party] is liable to [plaintiff] for its failure to perform the contractual duties described in the agreement and at the same time deny that [the non-signatory] is a party to that agreement in order to avoid arbitration of claims clearly within the ambit of the arbitration clause.

*Hughes Masonry Co., Inc. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836, 838-39 (7th Cir. 1981). *See also Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720 (8th Cir. 2001). Under this reasoning, the non-signatory in *Hughes* was able to compel arbitration because the very basis of the claim against the non-signatory was that it had breached duties and responsibilities purportedly assigned it by the agreement. This result follows in cases of this kind because the plaintiff "should not be allowed to assume the inconsistent position of affirming a contract in part by accepting or claiming its benefits, and disaffirming it in part by repudiating or avoiding its obligations, or burdens." *Dubail*, 372 S.W.2d at 132.

 The case at hand, however, is altogether different. Plaintiffs are not claiming that these appellants are liable for failing to perform some term of the Pro Net agreement but, instead, are arguing, as noted again, that Pro Net served as co-conspirator to misappropriate their business. Furthermore, to the extent these appellants contend that they should be allowed to compel arbitration under the related theory that the claims against them are "inextricably intertwined with those against Pro Net," that theory is inconsistent with the overarching rule that arbitration is ultimately a matter of agreement

---

**2.** These are, of course, the same categories of claims that defendants here have pressed against plaintiffs to hold them to the Amway and Pro Net contracts and the respective arbitration clauses.

between the parties. *See Dunn*, 112 S.W.3d at 436.

### E. Jury Trial Issue

Finally, Netco contends that in the event this Court holds that the trial court erred in ruling that Netco was not bound to arbitrate, then the proper disposition is not to order arbitration, but to remand for a jury trial as provided by the Federal Arbitration Act (FAA), and if not a jury trial, then a full evidentiary hearing replete with findings of fact and conclusions of law. Only then, Netco contends, can the disputed factual issues be resolved to determine whether a valid arbitration agreement exists. Appellants, on the other hand, argue that the issues should be determined only in a summary proceeding, as specified in section 435.355(1).

■■■■■ As Netco correctly observes, the FAA unambiguously provides for a jury trial when factual disputes arise in federal courts regarding the making of an arbitration agreement. 9 U.S.C. § 4 (2000). However, neither the United States Supreme Court nor this Court has determined whether parties are entitled to a jury trial when identical disputes arise in state courts. While the FAA's substantive law applies in state courts, the procedural provisions of the FAA do not bind state courts unless the state procedures in some way defeat the rights granted by Congress. *Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). Thus, this Court will look to the procedures set out in the MUAA rather than the FAA. The pertinent MUAA procedure, then, is section 435.355(1), which states:

> On application of a party showing an agreement described in section 435.350, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the

> agreement to arbitrate, the court *shall proceed summarily* to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

(emphasis added). Although this Court has not expressly addressed the meaning of the term "proceed summarily," and the statute does not provide a special definition, under the legal definition, which this Court now adopts, summary proceedings are those that are conducted "[w]ithout the usual formalities [and] without a jury." BLACK'S LAW DICTIONARY 1476 (8th ed.1999). *See also Rogers v. Dell Computer Corp.*, 127 P.3d 560 (Okla.2005); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266 (Tex.1992) (holding that the "proceed summarily" language in the UAA does not require a jury trial on the existence of an arbitration agreement).

■■■■■ The language of section 435.355(1) notwithstanding, Netco contends that the denial of a jury trial would deprive it of its constitutional right to a trial by jury in civil actions. However, this argument mischaracterizes the nature of the motion to compel arbitration, which, in essence, is an equitable remedy designed to compel specific performance of a term in a contract. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal.4th 394, 58 Cal.Rptr.2d 875, 926 P.2d 1061, 1070 (1996). In civil actions, of course, the right to trial by jury attaches only to actions at law for which damages may be awarded, not to suits in equity. *State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82, 85 (Mo. banc 2003). Though the motion to compel arbitration is ancillary to the underlying action at law, it is a separate proceeding authorized under section 435.355(1) in which equitable relief is sought.

363

■ Netco's fallback position that the summary proceeding conducted by the motion court was otherwise inadequate also fails. Where, as here, there were disputed factual issues, it is necessary to conduct an evidentiary hearing. However, given the summary nature of the proceedings, it is not enough for Netco to say that the motion court declined to entertain live witnesses and cross-examination or to provide findings of fact and conclusions of law. As noted, the motion court was provided with more than 4000 pages of documents, affidavits, deposition transcripts and other materials with which to resolve the factual disputes. Having also reviewed this voluminous mass, this Court is quite satisfied that the evidence presented on both sides was more than ample to resolve those disputes in the summary fashion dictated by the statute.

III. Summary and Conclusion

This Court holds:

1. Netco was not entitled to a jury trial to determine whether a valid arbitration agreement exists, and the motion court properly conducted a summary proceeding on that issue.

2. Netco is bound to arbitrate its claims against appellants Gooch, Childers, Dunn, and Pro Net under the arbitration clause set out in the Terms and Conditions of the Pro Net agreement.

3. Netco is not bound to arbitrate its claims against appellants Gooch Systems, Gooch Enterprises, TNT, Global, Dunn Associates, Evans, and Evans Associates, under the Pro Net agreement, nor is Netco bound to arbitrate its claims against any of the appellants under the arbitration clauses in the Amway agreement.

4. Schmitz Associates is not bound to arbitrate its claims under either of the two arbitration agreements.

Because some of the appellants can compel Netco to arbitrate and others cannot and because Schmitz Associates cannot be compelled to arbitrate by any of them, the issue arises whether the trial court should stay the litigation of all the claims pending arbitration. The parties agree that this determination lies within the trial court's discretion and that the case must be remanded for that purpose. *See AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 242 F.3d 777, 783 (8th Cir.2001); *Fru–Con Constr. Co. v. Southwestern Redev. Corp. II,* 908 S.W.2d 741, 746 (Mo.App.1995).

The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded.

All concur.