Mike SENNETT, Individually and as Plaintiff ad Litem for Edith D. Schmeets, Deceased, Brett Sennett and Julie Henning, and the Class of all Missouri Residents Likewise Situated, and Estates thereof, Respondents,

v.

NATIONAL HEALTHCARE CORPORATION, a Delaware Corporation, d/b/a NHC Healthcare Joplin; National Health Investors, Inc., d/b/a NHC Healthcare Joplin, Appellants.

No. 28825.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 24, 2008.

Motion for Rehearing or Transfer Denied
Oct. 15, 2008.

Stephen M. Strum, Thais Ann Folta & Jon W. Jordan, Sandberg, Phoenix & von Gontard, P.C., St. Louis, MO, for appellants.

Patrick M. Martucci, The Hershewe Law Firm, P.C., Joplin, MO, for respondents.

ROBERT S. BARNEY, Judge.

Appellant National Healthcare Corporation, a Delaware Corporation, d/b/a NHC Healthcare Joplin and Appellant National Health Investors, Inc., d/b/a NHC Healthcare Joplin ("Appellants") appeal the trial court's "Order and Judgment" denying Appellants' "Motion to Enforce Arbitration." We affirm the judgment of the trial court.

The record reveals Edith Schmeets ("Patient") was admitted to Appellants' long-term, residential care facility in Joplin, Missouri, on September 3, 2004. In her admittance paperwork was a "Jury Trial Waiver and Dispute Resolution Procedure" ("the Arbitration Agreement"), which included a two-page arbitration clause. Paragraph 2 of the Arbitration Agreement stated: **"BOTH PARTIES HEREBY WAIVE A JURY TRIAL FOR ALL DISPUTES AND CLAIMS BETWEEN THE PARTIES INCLUDING, BUT NOT LIMITED TO, THOSE ARISING FROM CONTRACT, TORT, OR STATUTORY LAW."** (Emphasis in original). The Arbitration Agreement further contained clauses relating to the selection of an arbitrator, venue, the procedure for negotiating awards, and the applicable governing law. Additionally, there was the following clause:

BY AGREEING TO RESOLUTION OF ALL DISPUTES AND CLAIMS BY SMALL CLAIMS COURT JUDICIAL PROCEEDINGS OR BINDING ARBITRATION, BOTH PARTIES ARE WAIVING THEIR RIGHTS TO A JURY TRIAL. THIS WAIVER ALSO APPLIES TO ALL APPEALS FROM SMALL CLAIMS COURT JUDGMENTS.

The parties agree that this Jury Trial Waiver and Dispute Resolution Procedure shall survive and not otherwise be revoked by the death or incompetence of Patient.

**I hereby agree to the Jury Trial Waiver and Dispute Resolution Procedure described above and its intent to provide administrative expedience. Its provisions have been explained to me and I have been provided the opportunity to ask questions about these provisions prior to my signature below. I understand and I waive my right to trial by jury. I also acknowledge my right to revoke the agreement to arbitrate as set forth in provisions (2) and (3) above, by completing the bottom portion of this page during normal business office hours within ten (10) business days of the date below.**

**Date**

**Patient's Signature:**_____ _____

**Legal Representative's Signature:** X /s/Mike Sennett[1] 9-3-04

**Additional Signature (if applicable):**_____

(Emphasis in original). Following the above language was a large box set apart from the rest of the text containing the following:

(Emphasis in original). Patient did not sign the Arbitration Agreement and there is nothing in the record to suggest Mike was legally appointed as Patient's "Legal Representative" by filing papers with a court of law.

Patient passed away on May 27, 2006. On May 4, 2007, Respondents filed a "Petition in Damages" against Appellants for the wrongful death of Patient. Count I of the petition asserted general negligence; Count II maintained a cause of action for

negligence *per se;* Count III asserted breach of contract; Count IV claimed breach of fiduciary duty; Count V stated a claim for aggravating circumstances; and Count VI for lost chance of survival. On June 14, 2007, Appellants filed separate answers in which they generally denied liability for Patient's death and asserted several affirmative defenses.

On August 31, 2007, Appellants filed a "Motion and Memorandum of Law to Enforce Arbitration Clause." A hearing was held on November 1, 2007. Ultimately, the trial court denied Appellants' request to submit all claims in Respondents' petition to arbitration. The trial court ruled Counts I, II, III, IV, and V relating to Respondents' claims against Appellants for wrongful death were outside the scope of the Arbitration Agreement and would be subject·to a jury trial, but Count VI for lost chance of survival was "stayed and referred to arbitration." This appeal by Appellants followed.

■■■ Both the Federal Arbitration Act ("FAA"), 9 U.S.C. section 16(a)(1)(B), and section 435.440.1 authorize immediate appeal and *de novo* review of a denial of a motion to compel arbitration.[2] *Triarch Indus., Inc. v. Crabtree,* 158 S.W.3d 772, 774 (Mo. banc 2005). "While the FAA's substantive law applies in state courts, the procedural provisions of the FAA do not bind state courts unless the state procedures in some way defeat the rights granted by Congress." *Netco, Inc. v. Dunn,* 194 S.W.3d 353, 362 (Mo. banc 2006); *see Southland Corp. v. Keating,* 465 U.S. 1, 16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). "Thus, this Court will look to the procedures set out in the [Missouri Uniform Arbitration Act ("MUAA")]." *Netco,* 194 S.W.3d at 362. "The pertinent MUAA procedure, then, is section 435.355(1), which states:

[o]n application of a party showing an agreement described in section 435.350, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

*Id.* (emphasis omitted).

■■ Hence, "[w]hen faced with a motion to compel arbitration, the motion court must determine whether a valid arbitration agreement exists and, if so, whether the specific dispute falls within the scope of the arbitration agreement." *Id.* at 358; *see also Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 427 (Mo. banc 2003). "In making these determinations, the court should apply the usual rules of state contract law and canons of contract interpretation." *Netco,* 194 S.W.3d at 357–58.

■■ Appellants raise three points of trial court error. In their first point relied on, Appellants assert the trial court erred in failing to compel arbitration of all claims in Respondents' petition because "the parties entered into a valid enforceable arbitration agreement;" "the plain language of the [Arbitration] [A]greement showed the parties intended to arbitrate this dispute;" "the waiver of a jury trial was clear and unmistakable;" and "the [Arbitration] [A]greement is not an unconscionable contract of adhesion." Second, Appellants maintain the trial court erred in failing to compel arbitration because the Arbitration Agreement "should be enforced under the ... FAA in that the FAA governs the [A]rbitration [A]greement and preempts

**2.** All Missouri statutory references are to RSMo 2000 unless otherwise set out.

restrictions imposed by state law." Third, Appellants assert the trial court erred in failing to compel arbitration because "the parties could agree to arbitrate Respondents' claims in that the parties agreed to arbitrate claims that had not yet arisen which includes derivative claims such as wrongful death actions." For the sake of clarity we initially address Appellants' third point relied on.

 As previously related, when evaluating the merits of a motion to compel arbitration the trial court must necessarily determine whether the purported arbitration agreement is valid and whether the specific claims raised are within the scope of the arbitration agreement. *Netco,* 194 S.W.3d at 358. "An obligation to arbitrate is based on assent and agreement." *Arrowhead Contracting, Inc. v. M.H. Washington, LLC,* 243 S.W.3d 532, 535 (Mo. App.2008); *see also Abrams v. Four Seasons Lakesites/Chase Resorts, Inc.,* 925 S.W.2d 932, 937 (Mo.App.1996). "Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." *Dunn Indus. Group, Inc.,* 112 S.W.3d at 435; *see also Village of Cairo v. Bodine Contracting Co.,* 685 S.W.2d 253, 258 (Mo.App. 1985).

In the present matter we are guided, in part, by *Finney v. National Healthcare Corp.,* 193 S.W.3d 393 (Mo.App.2006), a case also involving Appellants' nursing home in Joplin, Missouri. In *Finney,* decedent was admitted to Appellants' nursing home under a contract that included an arbitration clause. *Id.* at 394. The arbitration agreement in *Finney* was signed by decedent's granddaughter "on behalf of [d]ecedent for nursing home services." *Id.* Later, decedent's daughter ("Daughter"), "who was not a party to the admission contract nor was she a signatory on the contract, brought suit pursuant to section

537.080 . . . for the wrongful death of [decedent]." *Id.* Appellants filed a motion to compel arbitration of the claims raised in Daughter's wrongful death petition and the trial court denied Appellants' motion to compel arbitration. *Id.*

On appeal, this Court affirmed the trial court's denial of the motion to compel arbitration. *Finney,* 193 S.W.3d at 394. This Court stated:

Our resolution of this matter is based upon the enforceability of this contract as to [Daughter] and does not address the supposition that a wrongful death action brought by a signatory to the contract may be the subject of an arbitration clause. We simply find that [Daughter] was not a party to this contract and not bound by its provisions regardless of any decision regarding the enforceability of the arbitration clause in this contract.

* * *

Appellants bring four points of error, all of which argue the effects of the [MUAA] or [FAA] on a wrongful death suit brought under a valid contract. Appellants rely upon the premise that a valid contract exists between [Daughter] and Appellants which makes the arbitration clause contained within the contract binding upon [Daughter]. The premise is faulty. For the reasons set forth herein, we disagree that the contract for nursing home services bound [Daughter], as a beneficiary, pursuant to section 537.080, to the arbitration clause contained in the nursing home contract.

There is no question that a contract did not exist between [Daughter] and Appellants. To bypass the necessity of a valid contract between [Daughter] and Appellants in which [Daughter] agreed to arbitrate any disputes, Appellants argue that [Daughter] is bound by the contract signed on [d]ecedent's behalf. In other

words, Appellants claim that but for [d]ecedent's death, [Daughter] would not have a cause of action and, therefore, she stands in the shoes of [d]ecedent. To reach the conclusion that [Daughter] stands in [d]ecedent's shoes as a party to the contract, the cause of action for wrongful death must belong to [d]ecedent. That is not a correct statement of the law.

The wrongful death claim does not belong to the deceased or even to a decedent's estate. The wrongful death act creates a new cause of action where none existed at common law and did not revive a cause of action belonging to the deceased. A wrongful death action is not a transmitted right nor a survival right but is created and vested in the statutorily designated survivors at the moment of death. The damages under section 537.080 are different than the damages [d]ecedent would have been entitled to in a personal injury action against Appellants.

*Finney*, 193 S.W.3d at 394–95 (internal citations omitted). Accordingly, this Court found Daughter, as "a nonparty to the initial agreement containing an arbitration clause, is not bound by the clause in her independent cause of action for the wrongful death" of decedent. *Id.* at 397.

With that being said, Appellants maintain that the line of cases relied on in *Finney*, which state that a wrongful death action is separate and distinct from an action brought for injuries to the decedent, were abrogated by the Supreme Court of Missouri by its holding in *State ex rel. Burns v. Whittington*, 219 S.W.3d 224 (Mo. banc 2007). Appellants argue that *Burns* "established a new rule of law that wrongful death claims are derivative, and, therefore, are covered by [Patient's] Arbitration Agreement." Accordingly, Appellants urge that the trial court's reliance on *Fin-*

*ney* and its predecessor cases is in error due to the ruling in *Burns*. Respondents, on the other hand, assert *Burns* does not hold "that a wrongful death action is derivative of the personal injury claim. Rather, it says that the wrongful death action is derivative of the *underlying tortious acts,*" such that the "narrowly tailored" *Burns* opinion "was not intended to reverse all existing wrongful death law."

In *Burns*, a writ of *mandamus* case, the plaintiff filed a petition in the circuit court of the City of St. Louis on August 22, 2005, alleging he had sustained personal injuries from exposure to benzene products while in St. Louis County. *Id.* at 224–25. Shortly after filing his lawsuit, "[o]n August 28, 2005, the General Assembly amended the venue statutes" to provide that tort cases must be filed in the county where the plaintiff was "first injured," and that "[t]he new venue statutes were made applicable to all 'causes of action' filed after August 28, 2005." *Id.* at 225 (quoting § 538.305, RSMo Cum.Supp.2005). The plaintiff passed away in January of 2006 and an *amended* petition alleging wrongful death was filed by his beneficiary ("relator") in March of 2006. *Id.* The "[d]efendants filed a motion to transfer the case to St. Louis County arguing that the amended petition alleging wrongful death constituted a new 'cause of action' and was, therefore, subject to the new venue statutes." *Id.* "The circuit court found that [r]elator's amended petition constituted a new cause of action and, pursuant to the new venue statutes, transferred the case to St. Louis County." *Burns*, 219 S.W.3d at 225. Thus, the issue on appeal was "whether [r]elator's amended petition asserting a wrongful death claim constituted a new cause of action requiring transfer to St. Louis County." *Id.*

The Supreme Court of Missouri stated:

In the new version of section 508.010 [RSMo Cum.Supp.2005], the legislature employs the terms 'suit,' 'claim,' 'civil action,' and 'cause of action' ... this Court has defined the term 'cause of action' as 'a group of operative facts giving rise to one or more bases for suing'.... The term 'cause of action' thus refers to the negligent act or omission, as opposed to the injury which flows from the tortious conduct. Although death is the necessary final event in a wrongful death claim, the cause of action is derivative of the underlying tortious acts that caused the fatal injury. Therefore, even though [r]elator filed an amended petition alleging wrongful death, her cause of action did not change because the lawsuit had been and still is based upon the same operative facts; namely, [the plaintiff's] harmful exposure to ... benzene-containing products.... The new venue statutes are inapplicable. Consequently, [r]elator is entitled to writ of *mandamus* directing the circuit court of St. Louis County to transfer her lawsuit back to the circuit court of the City of St. Louis.

*Id.* at 225–26 (emphasis added).

As of the time of this opinion, the only case to construe *Burns* has been the Western District of this Court in *Lawrence v. Manor*, No. 67920, 2008 WL 731561 (Mo. App.W.D., filed March 18, 2008), *application for transfer granted on* June 24, 2008. The principal opinion in *Lawrence* was authored by Judge Paul M. Spinden and differing concurring opinions were filed by both Judge Ronald Holliger and Judge Victor Howard. It is important to note that while the three judges ultimately agreed with the disposition of the *Lawrence* matter, they offered three disparate rationales for that disposition.

The facts in *Lawrence* show that the decedent was admitted to a nursing home owned by the appellant. *Id.* at 1, 2008 WL 731561. As part of the admission paperwork, the decedent's daughter, as attorney-in-fact for the decedent, signed a document containing an arbitration clause. *Id.* at 1–2, 2008 WL 731561. Following the decedent's death, Mr. Lawrence, the decedent's son, filed a two-count suit against the appellant for the decedent's wrongful death. *Id.* at 2, 2008 WL 731561. The appellant filed a motion to compel arbitration of the claims associated with the wrongful death action, but the trial court denied the motion by relying on the legal principles espoused in *Finney*, 193 S.W.3d at 395. *Id.* at 3, 2008 WL 731561.

On appeal, and relying on the holding in *Burns*, Judge Spinden observed that if the decedent were alive the arbitration agreement would clearly "be binding on her and would require her to arbitrate any negligence claim that she might assert against [the appellant]," and that "if [Mr.] Lawrence's wrongful death claims are derivative claims derived from [the decedent's] claims, he is bound by the arbitration agreement." *Lawrence*, No. 67920 at 2–3, 2008 WL 731561. In explanation, Judge Spinden observed that "[g]iven the Supreme Court's framing of the issue [in *Burns* ] ... the court necessarily had to hold that a wrongful death claim was not a new and independent cause of action that was subject to the new venue statute." *Id.* Accordingly, he determined that "*Burns* unquestionably changed Missouri's wrongful death law" and "[t]his court is duty bound to follow the Supreme Court's pronouncement concerning Missouri law. *Burns* held that a wrongful death claim is a derivative action, and we dutifully follow." *Id.* at 5–6, 2008 WL 731561 (internal citations omitted).

Saliently, Judge Spinden addressed the appellant's argument that the "arbitration agreement is enforceable against [Mr.]

Lawrence because his sister agreed to arbitrate 'any claims.' " [3] *Id.* at 8, 2008 WL 731561. He set out that "[n]othing in the record ... indicates that [the sister] signed the arbitration agreement on her own behalf or on behalf of the wrongful death class. The evidence instead was that she signed it in her capacity as [the decedent's] attorney in fact." *Id.* As a result, Judge Spinden's opinion determined that Mr. Lawrence's sister "was acting as [the decedent's] agent and was not bound by the arbitration agreement in the manner suggested by [the appellant]" such that the trial court did not err in denying the appellant's motion to compel arbitration. *Id.* at 8–9, 2008 WL 731561.

In his concurring opinion, Judge Holliger agreed with the outcome in *Lawrence,* but disagreed with Judge Spinden's opinion that *Burns* applied to the case in that *Burns* should be "limited to the particular facts and legal issue raised there." *Lawrence,* No. 67920, *Holliger concurring opinion* at 1, 2008 WL 731561. Judge Holliger observed that *Burns* was "distinguishable because it involved an 'amended petition' rather than a new petition for wrongful death." *Id.* He stated that he understood "the opinion in *Burns* to hold that the amendment of the existing cause of action to assert a claim for wrongful death was so closely related that it was not the filing of a new cause of action," which under the new venue statute required tort cases to be filed in the county where the plaintiff was first injured. *Id.* at 2, 2008 WL 731561. Hence, had there not otherwise been a pending personal injury case in the City of St. Louis, venue would have been proper in St. Louis County. *Id.* at 1, 2008 WL 731561. Judge Holliger, therefore, did "not join in the conclusion that *Burns,* sub silentio overruled the decisions

in either *O'Grady v. Brown,* 654 S.W.2d 904 (Mo. banc 1983)" or *Finney,* 193 S.W.3d at 394–95. *Id.* at 2, 2008 WL 731561.

Likewise, Judge Howard also concurred in the *Lawrence* result, but while observing that *Burns,* 219 S.W.3d at 225, "plainly states that 'in a wrongful death claim, the cause of action is derivative of the underlying tortious acts,' which, if meant as a holding, would reverse prior case law," he also noted that he, nevertheless, viewed "the declaration in *Burns* as dictum—unnecessary to the result and, therefore, not binding on this court." *Lawrence,* No. 67920, *Howard concurring opinion* at 1, 2008 WL 731561.

This Court now turns to its interpretation of the holding in *Burns,* 219 S.W.3d at 225, together with Appellants' argument that *Burns* applies to the present matter such that the parties should be forced to arbitrate all claims in Respondents' petition.

In our analysis we note that the State of Missouri has recognized wrongful death as a cause of action since at least 1891 and the case law defining the parameters of such a cause of action has been rather consistent since the 1920's. *See Gray v. McDonald,* 104 Mo. 303, 16 S.W. 398 (1891); *Polk v. Krenning,* 2 S.W.2d 107 (Mo.App.1928). The law is well settled that

> [t]he cause of action for wrongful death: '[is] not transmitted to plaintiffs by way of the survival of any right of action which the deceased himself might have exercised if he had lived, but instead [is] a new and distinct cause of action created purely by statute, which sprang into being and accrued to plaintiffs as the designated beneficiaries at the moment,

---

**3.** It should also be noted that the principal opinion concluded that *Burns* was not to be

retroactively applied. *Lawrence,* No. 67920 at 8, 2008 WL 731561.

but not until the moment, that the death of the deceased occurred.' *American Family Mut. Ins. Co. v. Ward*, 774 S.W.2d 135, 136–37 (Mo. banc 1989) (quoting *Nanney v. I.H. Shell & Son*, 138 S.W.2d 717, 719 (Mo.App.1940)). This is because, in part, a "deceased ha[s] no pecuniary or proprietary interest in the cause of action brought by plaintiffs to recover damages for his wrongful death." *Nanney*, 138 S.W.2d at 719. "The right of action thus created [by the wrongful death statute] is neither a transmitted right nor a survival right. The plain language of the statute itself does not condition recovery upon the existence of a right to sue at either the time of the injury or the time of death." *O'Grady*, 654 S.W.2d at 910.

In examining *Burns*, it is important to note that *Burns* was a writ of *mandamus* case brought to determine the applicability of an intervening change in the venue statute subsequent to the original filing of a wrongful death action. The holding in *Burns* does not appear to create new law in the realm of wrongful death actions. Indeed, the assertion that a wrongful death "cause of action is derivative of the underlying tortious acts that caused the fatal injury," *Burns*, 219 S.W.3d at 225, does not appear necessary to the determination in *Burns* that the amended petition could be brought in the same county where the plaintiff filed his original petition. *See id.; see also Lawrence*, No. 67920, *Holliger and Howard concurring opinions* at 1–2, 2008 WL 731561. It appears to be *obiter dictum* "made while delivering a[n] ... opinion, but one that is not necessary to the decision in the case and therefore not precedential." BLACK'S LAW DICTIONARY 1103 (8th ed.1999); *see Swisher v. Swisher*, 124 S.W.3d 477, 482 (Mo.App. 2003).

Furthermore, it is historically unlikely, as argued by Appellants, that the Supreme Court of Missouri would overturn in excess of one hundred years of wrongful death case law with a single sentence fragment buried in a large paragraph in a venue case based on a writ of *mandamus*. None of the previous Supreme Court cases or other appellate cases discussing the substantive issues of the wrongful death statutes are mentioned in *Burns*, and there is no notation that the Supreme Court intended to overrule or abrogate any cases in this area of the substantive law. Accordingly, we need not follow *Burns*. Appellants are incorrect in their assertions that *Burns* is binding or even applicable to the present matter.

■ With that being said, the matter at hand should be guided by *Finney*, 193 S.W.3d at 394–95. Here, Mike signed the Arbitration Agreement on the line designated for "Legal Representative's Signature" on behalf of Patient. It does not appear that he signed the document in his individual capacity, and he did not sign on the line for "Additional Signature." Also, there is nothing in the record showing that Mike had been legally appointed as Patient's legal guardian or representative and there is no evidence suggesting he had apparent authority to do so. *See Alexander v. Chandler*, 179 S.W.3d 385, 388 (Mo. App.2005) (holding that apparent authority results from a direct communication, either verbal or by a combination of actions by the principal to a third party, causing that third party to reasonably believe that a person has authority to act for the principal). Additionally, neither Brett nor Julie signed the Arbitration Agreement. It does not appear that Respondents were technically parties to the Arbitration Agreement at issue; hence, they were not bound by it. " 'A party cannot be forced to submit to arbitration any dispute he has not agreed to submit.' " *Triarch Industries, Inc.*, 158 S.W.3d at 777 (quoting *Keymer v. Mgmt. Recruiters Int'l., Inc.*, 169 F.3d 501, 504 (8th Cir.1999)). As in

*Finney*, 193 S.W.3d at 394, Respondents were "not [parties] to this contract and not bound by its provisions regardless of any decision regarding the enforceability of the arbitration clause in this contract." *See also Lawrence*, No. 67920 at 8–9, 2008 WL 731561. "[A] nonparty to the initial agreement containing an arbitration clause, is not bound by the clause in her independent cause of action for the wrongful death." *Finney*, 193 S.W.3d at 397. The trial court did not err in denying Appellants' motion to compel arbitration because Respondents were not parties to the arbitration clause and, thus, were not bound by its terms. *Netco, Inc.*, 194 S.W.3d at 357–358; *Dunn Indus. Group, Inc.*, 112 S.W.3d at 427–28. Point III is denied.

Turning now to Appellants' remaining points relied on, we note their first point relied on presupposes "the parties entered into a valid enforceable arbitration agreement" and their second point relied on urges application of the FAA, which requires courts to enforce a valid contractual agreement to arbitrate if it is contained in a contract that comes within the FAA's purview. *Triarch Industries, Inc.*, 158 S.W.3d at 774. We agree with the trial court's findings that Respondents were not signatories in their individual capacities to the Arbitration Agreement at issue and are not bound by it; accordingly, we need not address Appellants' remaining points relied on. *Arrowhead Contracting, Inc.*, 243 S.W.3d at 535 (holding that "[a] party cannot be forced to arbitrate any dispute that he did not agree to arbitrate"); *see also Netco*, 194 S.W.3d at 362.

The Order and Judgment of the trial court is affirmed.

BATES, J., and SCOTT, P.J., concur.