

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| **MARLON GRANGER,** | **WD79584** |
| **Respondent,** | **OPINION FILED:** |
| **v.** | **November 8, 2016** |
| **RENT-A-CENTER, INC.,** | |
| **Appellant.** | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Wesley Brent Powell, Judge**

**Before Division Three:**
**Alok Ahuja, P.J., Victor C. Howard, and James Edward Welsh, JJ.**

Rent-A-Center, Inc. ("RAC") and former RAC store manager Kelli Stangle (collectively, the "Appellants") appeal the circuit court's judgment denying their motions to compel arbitration and to stay proceedings in a wrongful death lawsuit brought by Marlon Granger. We affirm.

## Background

In December 2014, Granger filed a wrongful death lawsuit against Appellants pursuant to section 537.080(1), RSMo,[1] for the death of his father, Kenneth Johnson. Granger alleged that, on August 25, 2012, former RAC employee Eric Patton, "posing" as an employee of RAC, used his RAC identification, apparent authority, and previous in-home relationship with Johnson to

---

[1]Statutory references are to the Revised Statutes of Missouri (RSMo) 2000, as updated by the 2013 Cumulative Supplement.

gain entry into Johnson's home. Patton then robbed, assaulted, and beat Johnson. Johnson never recovered and died on May 27, 2014.

Granger alleged that, by renting merchandise to Johnson that included in-home "delivery, setup, and service" and by "regularly" sending its employees, including Patton, to Johnson's home with express authority to conduct business on its behalf, Appellants created and maintained a "special business relationship" with Johnson. He further alleged that this "special relationship" imposed a duty on Appellants to properly hire, train, monitor, and, if necessary, terminate its employees to ensure Johnson's safety.[2] Granger alleged that Appellants breached that duty when, in early August 2012, RAC terminated Patton for dangerous criminal behavior but took no action to alert Johnson that Patton was no longer an employee, that he was fired for criminal behavior, that he was dangerous, and that he should not be allowed back into Johnson's home.

In response to Granger's petition, Appellants filed motions to compel arbitration and to stay proceedings. Appellants based these motions on two rental agreements between Johnson and RAC, both of which include an arbitration agreement. The arbitration agreements state that the parties agree to arbitrate any "claims," interpreted broadly to mean tort claims or any other claims, arising out of or relating to the rental agreements. Appellants claimed that, because the rental agreements are the *source* of the duty to Johnson that Granger alleges was breached, Granger is "estopped" from arguing that the arbitration agreements do not apply to him.

---

[2]Specifically, Granger alleged that the in-home nature of RAC's business created a "special business relationship" that imposed a duty on Appellants to fully and completely screen their employees before they are hired, to monitor and supervise them during their employment, to terminate a troublesome and/or dangerous employee immediately, to reasonably notify all customers that have come into contact with said employee of his termination, and to require all terminated employees to immediately return their uniform and identification badges. Granger further alleged that Patton's criminal acts against Johnson were foreseeable, given Patton's criminal behavior and the fact that Appellants' business is regularly conducted inside its customers' homes.

The circuit court denied the motions to compel arbitration and to stay proceedings. The court found that Granger cannot be compelled to arbitrate his claims against Appellants because his wrongful death claim is separate and distinct from any cause of action that belonged to the decedent,[3] and Granger is not bound by any agreements signed by Johnson.

**Standard of Review**

In Appellants' two points on appeal, they contest the denial of their motion to compel arbitration and their motion to stay proceedings.[4] Both are questions of law that we review *de novo*. *Lawrence v. Beverly Manor*, 273 S.W.3d 525, 527 (Mo. banc 2009); *Baier v. Darden Restaurants*, 420 S.W.3d 733, 736 (Mo. App. 2014). In assessing the validity and applicability of arbitration agreements, we apply the "usual rules of state contract law and canons of contract interpretation." *Nitro Distrib., Inc. v. Dunn,* 194 S.W.3d 339, 345 (Mo. banc 2006).

**Discussion**

In ***Point I***, the Appellants contend that the circuit court erred in denying their motion to compel arbitration because the arbitration agreements are valid and encompass the parties' dispute, and Granger is estopped from opposing their application because he "has sought the benefits of the contracts and so must honor their obligations."

The gist of Appellants' argument is that Granger must arbitrate his wrongful death claim because (1) Johnson entered into valid arbitration agreements with RAC; (2) the agreements apply to Granger under an estoppel theory; and (3) the agreements expressly cover any statutory

---

[3]Johnson brought a personal injury case against Appellants, but he died while the case was on appeal.

[4]The rental agreements provide that the arbitration agreements are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. Both § 435.440.1 and the FAA permit immediate appeal from an order denying a motion to compel arbitration or to stay proceedings. *Ellis v. JF Enter., LLC*, 482 S.W.3d 417, 419 n.3 (Mo. banc 2016); *Arrowhead Contracting, Inc. v. M.H. Washington, LLC*, 243 S.W.3d 532, 535 n.2 (Mo. App. 2008) (citing 9 U.S.C. § 16(a)(1)(A)-(B)).

or tort claims. Appellants acknowledge that Granger is not a signatory to any of the rental or arbitration agreements. They argue, nevertheless, that he is estopped from claiming that the arbitration agreements do not apply to him because, "without the rental agreements, there is *no relationship*" between them and Johnson and, "by relying on the [rental agreements] to establish his claims,"[5] Granger "attempt[s] to avail himself of the benefits of [those agreements]."

"When faced with a motion to compel arbitration, the motion court must determine whether a valid arbitration agreement exists and, if so, whether the specific dispute falls within the scope of [that] agreement." *Netco, Inc. v. Dunn,* 194 S.W.3d 353, 357 (Mo. banc 2006). "An obligation to arbitrate is based on assent and agreement." *Arrowhead Contracting, Inc. v. M.H. Washington, LLC,* 243 S.W.3d 532, 535 (Mo. App. 2008). "Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." *Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 435 (Mo. banc 2003).

Here, Granger did not enter into an arbitration agreement with the Appellants. He had no relationship with Appellants and was not a signatory on any of the agreements between them and Johnson. Accordingly, there is no factual basis from which to find that there exists a valid and binding agreement requiring Granger to arbitrate his wrongful death claims.[6]

---

[5]To succeed on his wrongful death claim based on negligence, Granger must show that: (1) the Appellants owed Johnson a duty of care, (2) they breached that duty, and (3) the breach was the cause in fact and proximate cause of his death. *See Robinson v. Mo. State Highway & Transp. Comm'n*, 24 S.W.3d 67, 74 (Mo. App. 2000). Appellants suggest that Granger must rely upon the rental agreements to establish RAC's duty to protect Johnson because, as a general rule, "a party has no duty to protect another from a deliberate criminal attack by a third person." *See Faheen v. City Parking Corp.*, 734 S.W.2d 270, 272 (Mo. App. 1987). As *Faheen* notes, however, certain exceptions exist, such as where obligations arise from "special relationships" or "special facts and circumstances." *Id.* In such circumstances, Missouri generally recognizes a duty where the third person is known to be violent. *Id.* at 273. *See also L.A.C. v. Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 257 (Mo. banc 2002). It will be for the fact-finder to determine whether these exceptions apply here.

[6]Missouri's wrongful death statute, section 537.080.1(1), provides that:

Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who, or the corporation which, would have been liable if

4

Missouri law is clear that an arbitration agreement signed by a decedent does not apply to decedent's heirs in a wrongful death claim. *See Lawrence*, 273 S.W.3d at 526-29; *Finney v. Nat'l Healthcare Corp.*, 193 S.W.3d 393, 395-97 (Mo. App. 2006). This is because a wrongful death claim is not a derivative claim but an independent action separate and apart from the deceased's claims. *Lawrence*, 273 S.W.3d at 527. "The wrongful death act creates a *new cause of action* where none existed at common law and [does] not revive a cause of action belonging to the deceased[.]" *Id.*; *see also Finney*, 193 S.W.3d at 395-96 (holding that a "wrongful death claim does not belong to the deceased or even to a decedent's estate," and, thus, a non-party to an arbitration agreement is not bound by it in an independent wrongful death case). *Lawrence* held that the arbitration agreement between the decedent and defendants did not bind the decedent's non-signatory son in his wrongful death suit (nor did it bind decedent's daughter, who signed the agreement as her mother's attorney-in-fact). 273 S.W.3d at 529. These cases make it clear that Granger is not bound in his wrongful death suit by Johnson's unrelated arbitration agreements.

Appellants acknowledge the Supreme Court's holding in *Lawrence* but claim that it is not pertinent to their motion to compel. Rather, they argue, their motion is based on the theory that Granger is estopped from disavowing the arbitration agreements because his wrongful death claim "relies upon" Johnson's contractual relationship with defendants, and Granger "can't be allowed to accept [its] benefits and disaffirm [its] obligations."

As a general rule, to compel arbitration of non-signatory claims -- even those that are "inextricably intertwined" with signatory claims -- "is inconsistent with the overarching rule that arbitration is ultimately a matter of agreement between the parties." *Netco*, 194 S.W.3d at 361-

death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured, which damages may be sued for . . . [b]y the spouse or children or the surviving lineal descendants of any deceased children, natural or adopted[.]

62. As this Court recently explained, a willing signatory to an arbitration agreement seeking to compel an unwilling *non*-signatory to arbitrate must establish a theory of "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; [*or*] (5) estoppel." *Cent. Trust Bank v. Graves*, WD 78757, 2016 WL 4087115, at *4 (Mo. App. W.D. Aug. 2, 2016).

Here, RAC (a "willing signatory") seeks to bind Granger (an "unwilling non-signatory") to arbitration under a theory of estoppel. Appellants cite various cases for the proposition that a party will be estopped from "affirming a contract in part by accepting or claiming its benefits, and disaffirming it in part by repudiating or avoiding its obligations, or burdens." *See, e.g., Dubail v. Med. W. Bldg. Corp.,* 372 S.W.2d 128, 132 (Mo. 1963); *Netco*, 194 S.W.3d at 360; *Hellenic Inv. Fund, Inc. v. Det. Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006); *Wojtalewicz v. Pioneer Hi-Bred Int'l.*, 959 F.Supp.2d 1215, 1225-26 (D. Neb. 2013).

Notably, none of those cases involved a wrongful death claim, such as we have here. Also unlike here, in each of those cases, the non-signatory was found to have actually received a benefit from the agreements that incorporated the arbitration agreements. *See Dubail,* 372 S.W.2d at 128-32 (defendants received benefits of the contract by accepting plaintiffs' legal services and money advanced and by relying on contract provision in a separate lawsuit); *Netco*, 194 S.W.3d at 360 (applying estoppel theory to enforce arbitration agreement against one plaintiff where the record revealed that that plaintiff received benefits of the contract); *Hellenic*, 464 F.3d at 517-20 (applying "direct benefits estoppel" where record showed non-signatory knowingly accepted benefits and brought claims that required reference to contract containing arbitration clause); *Wojtalewicz*, 959 F.Supp.2d at 1225-26 (applying "direct benefits estoppel" to compel non-signatories to arbitrate claims that were based on rights and warranties created by the contract containing arbitration agreement). While it is true that "[b]y accepting benefits, a

6

party may be estopped from questioning the existence, validity and effect of a contract," that is not true where, as in this case, ***there is no benefit*** to that party. *Nitro*, 194 S.W.3d at 347-48.

Nor is there any evidence that Granger's wrongful death petition relates to or relies upon the contractual relationship between Johnson and RAC. The same estoppel argument that the Appellants raise here was rejected as to non-signatory plaintiffs in *Netco*. *See* 194 S.W.3d at 358-60. That Court found that those plaintiffs were not required to arbitrate, because "the petition shows that [these plaintiffs are] not seeking to enforce any provision in the . . . agreements. Appellants are being sued, instead, under conspiracy theories, not because they breached any contractual term." *Id*. at 358. Similarly, here, Granger does not seek to recover contract benefits from RAC but damages arising from the wrongful death of Johnson.

Granger's petition raises a wrongful death claim against Appellants based on negligent hiring, training, and supervising of the employee who beat his father to death.[7] He does not rely upon any contract or agreement to make an essential element of his case, and no judge or jury will be required to consult any contract or agreement to assess Appellants' negligence in the case. Rather, Granger's claim for negligent hiring and supervision is based, primarily, on the Appellants' "special" in-home relationship with Johnson, as well as their knowledge of Patton's dangerous proclivities.

Missouri's wrongful death law, the facts of this case, and Granger's petition all establish that, even if the arbitration agreements were valid as to Johnson, they are not valid or applicable to Granger and do not encompass Granger's wrongful death claim. Moreover, Granger does not

---

[7]To succeed on this claim, in addition to establishing a "special relationship," Granger will have to establish that Appellants knew or should have known of Patton's dangerous proclivities and that Appellants' negligence was a proximate cause of Johnson's injury. *See, e.g., Gibson v. Brewer*, 952 S.W.2d 239, 246 (Mo. banc 1997).

seek to recover any damages arising under the contract between Johnson and RAC. Thus, Granger is in no way "estopped" from denying their application to him. Point I is denied.

In *Point II*, the Appellants argue that the circuit court erred as a matter of law in denying their motion to stay proceedings pending a final ruling on the motion to compel arbitration because "the intended benefits of arbitration will be lost if discovery continues during the pendency of this appeal." As explained *supra*, the circuit court did not err in denying the motion to compel arbitration; consequently, the need to stay the proceedings because, otherwise, "the intended benefits of arbitration will be lost" is a moot point. Point II is denied.

### Conclusion

The circuit court did not err in denying either the motion to compel arbitration or the motion to stay the proceedings. Thus, we affirm the circuit court's judgment.

/s/JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

8