EDWARD R. ARDINI, JR., JUDGE
This appeal follows an Order entered by the Circuit Court of Jackson County denying a Motion to Stay and Compel Arbitration in a case brought by NutraPet Systems, LLC ("NutraPet") against Probiotic Holdings, LLC ("Holdings") and Proviera Biotech, LLC ("Proviera") for breach of contract arising from a promissory note. Holdings and Proviera counterclaimed, alleging breach of confidentiality and non-compete provisions contained in a separate *412 agreement as well as misappropriation of trade secrets. The Order denying the Motion to Stay and Compel Arbitration is affirmed in part and reversed in part.
FACTUAL AND PROCEDURAL BACKGROUND[1]
Holdings is the parent company of Proviera, formed in 2012, and Sustainable Community Development, LLC ("SCD"). In 2009, SCD primarily manufactured and distributed probiotic products that could be consumed by livestock such as cattle. In that same year, SCD entered into an Independent Contractor Agreement with NutraPet.[2] Pursuant to the agreement, NutraPet was to provide SCD "consulting for strategic [b]usiness [o]bjectives, [t]echnology [d]evelopment. [and] [o]perational [e]ffectiveness[.]"[3]
NutraPet was and continues to be solely owned by Gerhard Poppel ("Poppel"). In January 2010, Poppel also became an employee of Kelly Foods Corporation ("Kelly Foods"), a pet food company. This relationship was known to Holdings and SCD, as Poppel introduced Kelly Foods to SCD as a potential customer and a licensing agreement was reached between the two companies. Poppel also continued his relationship with Holdings and its affiliates during this time, making his first financial investments in Holdings and becoming a member of its Board of Directors in late 2010. In October 2011, Holdings and Proviera learned that Poppel and NutraPet had joined Kelly Foods in filing a provisional patent application with the U.S. Patent and Trademark Office, which Holdings and Proviera believed relied on and incorporated their intellectual property.[4]
In 2012, Proviera was formed to raise capital and commercialize the leather tanning probiotics and biochemical technology developed by SCD. Poppel was still a member of the Holdings' Board of Directors at this time, and in May 2013, NutraPet loaned Proviera $500,000, which was evidenced by execution of a Promissory Note. The Promissory Note required Proviera to repay the loan with interest through the making of monthly payments over a thirteen-year period. Holdings was the guarantor under the Promissory Note for any outstanding balance. In November 2015, Proviera suspended making its monthly payments required under the Promissory Note and Holdings similarly refused a demand to make payment as the guarantor. On December 15, 2015, NutraPet filed this action in the Circuit Court of Jackson County against Holdings and Proviera alleging breach of the Promissory Note.
Holdings and Proviera answered and asserted affirmative defenses. Both of these parties also counterclaimed, alleging that NutraPet breached the confidentiality and *413 non-compete provisions contained in the Independent Contractor Agreement and that NutraPet misappropriated trade secrets.[5]
Holdings and Proviera additionally moved to compel arbitration, relying on a provision contained in the 2009 Independent Contractor Agreement between NutraPet and SCD. The provision provided:
ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR IN CONNECTION WITH, OR RELATING TO, THIS AGREEMENT OR ANY BREACH OR ALLEGED BREACH HEREOF, EXCLUDING ACTIONS FOR INJUNCTIVE RELIEF, SHALL, UPON THE REQUEST OF ANY PARTY INVOLVED, BE SUBMITTED TO AND SETTLED BY BINDING ARBITRATION IN THE CITY OF KANSAS CITY, STATE OF MISSOURI, PURSUANT TO THE RULES THEN IN EFFECT OF THE AMERICAN ARBITRATION ASSOCIATION (OR AT ANY OTHER PLACE OR UNDER ANY OTHER FORM OF ARBITRATION MUTUALLY ACCEPTABLE TO THE PARTIES INVOLVED) ...
Holdings and Proviera, while not signatories to the agreement, asserted that they were entitled to enforce the arbitration provision based on their relationship to SCD. On November 18, 2016, a hearing was held on the motion to compel arbitration, which the trial court later denied. This appeal follows.
DISCUSSION
Holdings and Proviera allege two points on appeal. In their first point, they argue that the trial court erred in finding that they were not entitled to enforce the arbitration provision as third-party beneficiaries or express parties to the Independent Contractor Agreement. They also argue that threshold issues of arbitrability were required to be determined by the arbitrator.[6] In their second point, Holdings and Proviera relatedly assert that the trial court's finding that they were not entitled to enforce the arbitration provision was not supported by substantial evidence.
Standard of Review
"Whether the trial court should have granted a motion to compel arbitration is a question of law decided de novo. " Ellis v. JF Enters., LLC , 482 S.W.3d 417, 419 (Mo. banc 2016) (citation omitted). "In assessing the validity and applicability of arbitration agreements, we apply the 'usual rules of state contract law and canons of contract interpretation.' " Granger v. Rent-A-Center , 503 S.W.3d 295, 297 (Mo. App. W.D. 2016) (citation omitted). This is because "[a]rbitration is a matter of contract," and any "obligation to arbitrate is based on assent and agreement." Id. at 298 (citations omitted). "[A] party cannot be required to arbitrate a dispute that it has not agreed to arbitrate[,]" and arbitration will only be compelled where "a valid arbitration agreement exists and ... the specific dispute falls within the scope of that *414 agreement." Id. (citations omitted). Our review of the trial court's interpretation of the "contract is de novo , as questions of contract interpretation are questions of law." A. Zahner Co. v. McGowan Builders, Inc. , 497 S.W.3d 779, 783 (Mo. App. W.D. 2016) (citation omitted).
In arguing that the claims asserted by both parties must be arbitrated, Holdings and Proviera collapse NutraPet's Promissory Note claim with their counterclaims and put forth a singular analysis that ignores the distinct origins of the claims. Because the parties' claims arise from different contracts, one containing an arbitration provision and one not, we analyze the claims separately.
Breach of Promissory Note
NutraPet's suit against Holdings and Proviera is grounded in an alleged breach of a Promissory Note entered between those parties in 2013. The Promissory Note does not contain an arbitration provision. Holdings and Proviera nevertheless argue that the claim must be addressed through arbitration based on the arbitration provision contained in the 2009 Independent Contractor Agreement between NutraPet and SCD. Indeed, the only arbitration provision relevant to these parties is contained in the Independent Contractor Agreement.
Holdings and Proviera attempt to argue that the Promissory Note claim is "related to and [ ] connected with the [Independent Contractor] Agreement" because the Independent Contractor Agreement "launched a business relationship" between the parties. However, the genesis of the parties' relationship is of little relevance to our analysis. Instead, our focus is more specifically directed at determining if the Promissory Note relates to the separate Independent Contractor Agreement; an exercise that reveals a complete lack of any meaningful connection between the two agreements. Nothing in the Independent Contractor Agreement suggests that it encompassed the lending of money or contemplated, authorized, or remotely applied to a loan or promissory note, let alone a promissory note entered into four years later involving a different subsidiary of Holdings that did not exist at the time the Independent Contractor Agreement was executed.
A more fundamental flaw to the theory relied on by Holdings and Proviera is that the Independent Contractor Agreement expired more than two years prior to the execution of the Promissory Note. The term of the Independent Contractor Agreement was defined as "one year or until the contractor receives a working visa in the USA and moves to the USA and becomes an Employee of the Company, or until terminated by the company at any time with no advance notice or terminated by the Contractor upon ninety (90) days['] notice." Holdings and Proviera posit that the Independent Contractor Agreement was still in effect in 2013 when the Promissory Note was executed because it had not been terminated by either party.[7] This conclusion violates basic tenets of contract interpretation because it renders meaningless *415 the "one year" language contained in the Independent Contractor Agreement's term. See Dunn Indus. Group, Inc. v. City of Sugar Creek , 112 S.W.3d 421, 428 (Mo. banc 2003) ("[E]ach term of a contract is construed to avoid rendering other terms meaningless." (citation omitted)); Belton Chopper 58, LLC v. North Cass Dev., LLC , 496 S.W.3d 529, 532 (Mo. App. W.D. 2016) ("An interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part ... of no effect." (citation omitted)). Instead, the logical reading of the provision is that the Independent Contractor Agreement expired in one year unless that term was shortened by the contractor obtaining a work visa and becoming an employee "of the Company" or either party electing to prematurely terminate the agreement. "If the contract language is not ambiguous, the contract language is controlling[.]" A. Zahner Co. , 497 S.W.3d at 783. Thus, the Independent Contractor Agreement entered November 3, 2009, was not in effect past November 2, 2010.[8] This conclusion is consistent with the trial court's finding that "the 2009 Independent Contractor Agreement was not in existence after October 2010" as well as Holdings' and Proviera's own counterclaims, which allege that NutraPet was an independent contractor for SCD from November 2009 to October 2010.
The argument put forth by Holdings and Proviera that the arbitration provision contained in the Independent Contractor Agreement applies to NutraPet's breach of contract claim must fail because the Independent Contractor Agreement expired more than two years prior to the execution of the Promissory Note.[9] Accordingly, *416 the trial court's denial of Holdings' and Proviera's Motion to Stay and Compel Arbitration is affirmed as to NutraPet's claim for breach of contract arising from the Promissory Note.[10]
Holdings' and Proviera's Counterclaims
Holdings and Proviera allege in their counterclaims that NutraPet breached the confidentiality and non-compete provisions contained in the Independent Contractor Agreement between NutraPet and SCD and misappropriated trade secrets. Unlike NutraPet's cause of action on the Promissory Note, the counterclaims relate to and arise from the Independent Contractor Agreement and thus squarely implicate the agreement's arbitration provision. And, while the counterclaims are directed at conduct by NutraPet that appears to have occurred after the expiration of the Independent Contractor Agreement, the agreement specifically provided that the confidentiality and non-compete provisions survived its expiration.[11]
While we conclude that the allegations contained in the counterclaims relate to the Independent Contractor Agreement, disputes remain over whether those claims are captured within the scope of the arbitration provision. As an example, issues have been raised concerning whether Holdings and/or Proviera have standing to enforce the arbitration provision contained in the Independent Contractor Agreement that neither party signed and that was entered into (and expired) prior to the creation of Proviera. The arbitration provision contained in the Independent Contractor Agreement specifically incorporated "the rules then in effect of the American Arbitration Association" and, since the trial court's decision in this case, our Supreme Court has held that "the incorporation of the American Arbitration Association (AAA) rules into [an] arbitration agreement provide[s] clear and unmistakable evidence that the parties intended to delegate threshold issues to the arbitrator." Pinkerton , 531 S.W.3d at 39-40. As a result, issues of arbitrability relating to the counterclaims are to be determined by the arbitrator and not the courts.
While we have determined that the counterclaims brought by Holdings and Proviera relate to and/or arise from the Independent Contractor Agreement and have further concluded that threshold issues *417 of arbitrability concerning these claims were delegated to the arbitrator, we find it necessary to note the unusual scenario presented by this situation. Here, the parties seeking to compel arbitration (of the counterclaims) are the same parties who brought the relevant claims. As a result, while we find that the trial court should have granted the Motion to Stay and Compel Arbitration as it pertained to the counterclaims, such an order would seem unnecessary, as there appears to have been nothing precluding Holdings and Proviera from voluntarily dismissing their counterclaims and bringing those claims in arbitration. We nevertheless reverse the trial court's denial of that motion, as we find that it was incorrect as a matter of law.[12]
CONCLUSION
The trial court's Order denying the Motion to Stay and Compel Arbitration is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.
All concur.

We defer to the trial court's factual findings, and "all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Bowers v. Asbury St. Louis Lex, LLC , 478 S.W.3d 423, 426 (Mo. App. E.D. 2015) (quoting Rule 73.01(c)).

At the time, NutraPet sold flavors (also known as palatants), some of which included probiotic substances, to the pet food industry.

The Independent Contractor Agreement was "by and between [SCD] ... together with all of its affiliates, subsidiaries[,] and related companies (hereinafter referred to as "Company"), and NutraPet ..." At the time that the agreement was executed, Holdings was the only affiliated company of SCD.

A year later, Poppel and Bob Kelly (the principal of Kelly Foods) filed a non-provisional U.S. Patent application as well as an international patent application. Holdings and Proviera claim that these applications also disclosed and relied on their trade secrets and intellectual property.

The Answer and Counterclaims filed by Holdings and Proviera specifically stated that they "d[id] not intend to waive-and expressly reserve[d]-any rights they may have to resolve this dispute pursuant to any arbitration agreements."

Point I presents two distinct legal issues. "[A] point relied on should contain only one issue, and parties should not group multiple contentions about different issues together in one point relied on. Points that include more than one issue are multifarious and preserve nothing for review." City of Joplin v. Wallace Bajjali Dev. Partners, L.P. , 522 S.W.3d 327, 330 (Mo. App. S.D. 2017) (citations omitted). However, we may "review multifarious points ex gratia. " Id. at 331 (citation omitted).

Holdings and Proviera also claim that "the arbitration clause and the confidentiality provisions [ ] remain operational even after any term in the [Independent Contractor] Agreement, if one exists at all." This general statement provides no aid in stretching the arbitration provision contained in the Independent Contractor Agreement to the separate, unrelated, and distinct Promissory Note entered into after its expiration. By contrast, as discussed in our analysis concerning the counterclaims, infra , claims arising from violation of the Independent Contractor Agreement can survive beyond the expiration of that agreement and may be subject to the arbitration provision.

In so concluding, we need not address the merits of NutraPet's argument that the Independent Contractor Agreement expired after it provided an initial report to SCD in November 2009.

The Court has received supplemental briefing from the parties on the relevance of State ex rel. Pinkerton v. Fahnestock , 531 S.W.3d 36 (Mo. banc 2017) to this case. Holdings and Proviera argue that Pinkerton requires an arbitrator resolve all issues regarding application of the arbitration provision contained in the Independent Contractor Agreement to the Promissory Note based on the parties' incorporation of the rules of the American Arbitration Association (AAA). We disagree. In Pinkerton , there was an arbitration clause applicable to the matters in dispute and issues were raised concerning the formation and enforceability of that clause. Our Supreme Court concluded, based on the incorporation of the AAA rules, that those threshold issues were delegated to the arbitrator for decision.
In contrast, here there is no arbitration provision agreed to by the parties that is applicable to the Promissory Note. The Promissory Note does not contain an arbitration clause and does not reference or incorporate any other agreement between the parties to arbitrate disputes arising from the Promissory Note. See Pinkerton , 531 S.W.3d at 48-49 ("[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration. Parties cannot be required to submit to arbitration any dispute which he or she has not agreed so to submit." (citations and internal quotation marks omitted)); Granger , 503 S.W.3d at 298 ("An obligation to arbitrate is based on assent and agreement. Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." (citations and internal quotation marks omitted)); see also State ex rel. Hewitt v. Kerr , 461 S.W.3d 798, 810-11 (Mo. banc 2015) ("To incorporate terms from another document, the contract must made clear reference to the document and describe it in such terms that its identity may be ascertained beyond a reasonable doubt." (citation and internal quotation marks omitted)). Moreover, even if the Independent Contractor Agreement had not expired prior to the execution of the Promissory Note, the arbitration provision in that agreement was limited to disputes and claims arising out of or connected with the Independent Contractor Agreement. The Promissory Note has nothing to do with the previously expired Independent Contractor Agreement and does not fall within its arbitration provision. See Douglas v. Regions Bank , 757 F.3d 460, 463-64 (5th Cir. 2014) (stating that despite a valid delegation provision, a court may decide whether an assertion that a claim falls within an arbitration clause is "wholly groundless").

The trial court did not focus its legal reasoning on the expiration of the Independent Contractor Agreement. However, we "are concerned primarily with reaching a correct result, and thus ... do not need to agree with the reasoning of the trial court in order to affirm." Sharp v. Kansas City Power & Light Co. , 457 S.W.3d 823, 827 n. 5 (Mo. App. W.D. 2015) (citation and internal quotation marks omitted). Additionally, our conclusion that the arbitration provision in the Independent Contractor Agreement is unavailable to compel NutraPet's claim for breach of the Promissory Note into arbitration renders it unnecessary for us to address the other arguments raised by Holdings and Proviera related to this claim.

For instance, the provision in the Independent Contractor Agreement addressing Confidential Information specifically states that "Contractor covenants and agrees that he or she shall not, at any time during or following the cessation of his or her consulting hereunder, directly or indirectly, use, divulge or disclose, for any purpose whatsoever other than to benefit Company, any Confidential Information."

We are also cognizant that, in light of our finding that the breach of contract claim involving the Promissory Note is properly before the trial court, Holdings and Proviera may wish to withdraw their Motion to Stay and Compel Arbitration and maintain their counterclaims in the trial court.