

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| T. PARSLEY HUGHES, ET AL., | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| v. | ) | WD81996 |
| | ) | |
| ANCESTRY.COM, ET AL., | ) | Opinion filed: May 28, 2019 |
| | ) | |
| Appellants. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
THE HONORABLE SANDRA MIDKIFF, JUDGE**

Before Division Three: Thomas H. Newton, Presiding Judge,
Anthony Rex Gabbert, Judge and Edward R. Ardini, Jr., Judge

Tina Parsley Hughes and Jose Cordada[1] ("Plaintiffs") filed suit in the Circuit Court of

Jackson County against Ancestry.com Inc. and Ancestry.com DNA LLC (collectively,

"Ancestry"), alleging that Ancestry released their private health information to third parties

without their expressed permission. Ancestry filed a Motion to Compel Arbitration and Stay

Litigation, which was denied by the trial court. Ancestry appeals from that denial. We reverse and

remand with instructions.

---

[1] Hughes and Cordada are the named plaintiffs in this lawsuit. The petition sought class certification.

## I.    Factual and Procedural Background

Ancestry is a Utah company doing business nationwide and internationally. Ancestry sells genealogy and DNA products and services, including through operation of the website Ancestry.com. As part of its services, Ancestry offers its customers the opportunity to have their DNA tested to discover their ethnicity. Plaintiffs purchased DNA-testing kits from Ancestry and created Ancestry.com accounts.[2]

In order to create their respective accounts, Plaintiffs entered their full names and email addresses and created a password on a webpage. This webpage contained the following message:

> By clicking "Continue" below, you agree to the Ancestry Terms and Conditions and Privacy Statement and agree Ancestry may contact you via email about their products and services, such as family tree hints and updates and promotional offers and events [ ] that help you unlock your past to inspire your future. You can unsubscribe or customize your email settings at any time.

Within this paragraph, the Terms and Conditions and Privacy Statement were visibly hyperlinked to send users to those documents. A "Continue" button immediately followed this disclaimer. Plaintiffs clicked "Continue" to create their accounts.

Plaintiffs filed their Class Action Petition, alleging that Ancestry "released [Plaintiffs'] and the members of the Class' private health information to unknown persons or entities without expressed permission to do so from [Plaintiffs] or members of the Class."[3] Ancestry filed a Motion to Compel Arbitration and Stay Litigation, arguing that the "Dispute Resolution" section of the

---

[2] Hughes signed up for an account and activated her DNA kit on October 1, 2016. Cordada signed up for an account on December 19, 2017, and activated his DNA kit on February 8, 2018.

[3] Plaintiffs' petition alleged claims for violation of the Missouri Merchandising Practices Act, breach of the fiduciary duty of confidentiality, breach of contract, and negligence, and sought monetary damages and injunctive relief.

Terms and Conditions agreed to by Plaintiffs included an agreement to arbitrate all disputes[4] subject to three exceptions:

> If [the customer's] dispute is not resolved within 30 days after contacting [Ancestry], then [the customer] and Ancestry agree that we will resolve it through final and binding arbitration, with the following three exceptions:
>
> 1. [The customer] may assert [his or her] dispute, if it qualifies, in small claims court.
>
> 2. Both [the customer] and Ancestry may bring a suit in court in the state of Utah only for a claim of infringement or other misuse of intellectual property rights. In this case, we both waive any right to a jury trial.
>
> 3. If it qualifies, [the customer] may bring a claim to the attention of a relevant federal, state, or local agency that may seek relief against [Ancestry] on [the customer's] behalf.

The agreement specifically explained that any arbitration proceeding would be conducted according to the American Arbitration Association's ("AAA") rules, and the reference to the rules was hyperlinked to a downloadable copy of them. AAA Consumer Arbitration Rule R-14(a), states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."

Plaintiffs filed Suggestions in Opposition to Ancestry's Motion to Compel Arbitration, arguing that the arbitration agreement "lacks consideration and is unconscionable." Specifically, Plaintiffs asserted that the agreement lacked consideration because the Terms and Conditions allowed Ancestry to unilaterally amend the arbitration agreement. Paragraph 7 states:

---

[4] The Terms and Conditions also required that customers initially attempt to resolve any disputes by contacting Ancestry. Whether Plaintiffs attempted to resolve their disputes directly with Ancestry before filing suit is not at issue in this appeal.

We have the right to modify these Terms or any additional terms that apply to a Service at any time, including to reflect changes to the law or changes to our Services. We will notify you of any material changes by posting information through the Services or via email. Such material changes will not apply retroactively and will become effective thirty days after they are posted, except that changes addressing new functions in the Services or changes made for legal reasons will be effective immediately. Your continued use of the Services after a change to the Terms will mean you accept the changes. If any changes are unacceptable to you, you may stop using the Services and, if applicable, cancel your subscription as described here.

Plaintiffs also alleged that the agreement was procedurally and substantively unconscionable.[5]

The trial court overruled Ancestry's Motion to Compel Arbitration and Stay Litigation,

finding that the arbitration agreement was invalid because it lacked mutual consideration:

The arbitration agreement at issue in this litigation is illusory, and lacks mutuality of consideration. The arbitration agreement includes the following provision that allows Defendants to unilaterally amend the arbitration agreement: "[W]e have the right to modify these terms or any additional terms that apply to a Service at any time, including to reflect changes to the law or changes to our Services." [ ] The amendment provision does not necessitate the agreement of Plaintiff before the execution and inclusions of additional arbitration provisions. [Ancestry's] unilateral ability to amend renders the mutual promise to arbitrate as illusory.

Ancestry appeals.[6]

## II.    Standard of Review

"The denial of a motion to compel arbitration is reviewed *de novo*." *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 113 (Mo. banc 2018) (citation omitted). "Our review of the trial court's interpretation of an arbitration provision is also *de novo*, as arbitration is contractual, and contract

---

[5] Plaintiffs argued that the agreement was substantively unconscionable because the terms "(1) permit Ancestry to unilaterally modify the agreement without limitation; (2) permit Ancestry to pursue its primary remedies in court; (3) precludes [sic] any appeal of the arbitrator's award; (4) require any arbitration hearing to be held in the State of Utah; (5) allow only Ancestry to seek injunctive relief; and (6) preclude any action not brought on an individual basis." Plaintiffs also alleged that the agreement was procedurally unconscionable because it was a contract of adhesion "camouflaged" as a "browsewrap" agreement.

[6] An order denying a motion to compel arbitration is appealable under section 435.440, RSMo. *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 773 (Mo. banc 2014).

4

interpretation is a question of law." *Latenser v. Tarmac Int'l, Inc.*, 549 S.W.3d 461, 463 (Mo. App. W.D. 2018) (citation omitted).

### III.    Discussion

Ancestry raises three points on appeal. In its first point, Ancestry alleges that the trial court erred in overruling its Motion to Compel Arbitration, arguing there was sufficient consideration to support the contract, including the arbitration agreement. In its second point, Ancestry claims that the trial court erred in finding that the consideration supporting the arbitration agreement was illusory because its right to modify the Terms and Conditions of the contract was limited to prospective modifications. Finally, in its third point, Ancestry argues that the trial court erred in overruling the Motion to Compel Arbitration because the parties delegated threshold questions of arbitrability to the arbitrator. Because it is dispositive, we address only Point III.

"Under the Federal Arbitration Act (FAA), arbitration is solely a matter of contract." *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 49 (Mo. banc 2017) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). "'[A] party cannot be required to arbitrate a dispute that it has not agreed to arbitrate[,]' and arbitration will only be compelled where 'a valid arbitration agreement exists and . . . the specific dispute falls within the scope of that agreement.'" *NutraPet Sys., LLC v. Proviera Biotech, LLC*, 542 S.W.3d 410, 413-14 (Mo. App. W.D. 2017) (quoting *Granger v. Rent-A-Ctr.*, 503 S.W.3d 295, 298 (Mo. App. W.D. 2016)). "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *Dotson v. Dillard's, Inc.*, 472 S.W.3d 599, 603 (Mo. App. W.D. 2015) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)).

A "delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Soars,* 563 S.W.3d at 114 (Mo. banc 2018) (quoting *Rent-A-Ctr., West, Inc. v. Jackson,* 561 U.S. 63, 68 (2010)). "Accordingly, it 'is simply an additional, antecedent agreement the party seeking arbitration asks the . . . court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.'" *Id.* (quoting *Rent-A-Ctr.,* 561 U.S. at 70). "A delegation provision giving an arbitrator the power to decide threshold issues of arbitrability 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2). "The question of arbitrability – whether an agreement creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for judicial determination, unless the parties clearly and unmistakably provide otherwise." *Caldwell v. UniFirst Corp.,* 2019 WL 1445220 at *3 (Mo. App. E.D. April 2, 2019) (citing *Dotson,* 472 S.W.3d at 604; *Latenser,* 549 S.W.3d at 463). Therefore, we must first look to the terms of the parties' agreement to determine whether it contains a provision that "clearly and unmistakably" delegates threshold issues of arbitrability to the arbitrator.

"An arbitration agreement 'need not recite verbatim that the parties agree to arbitrate arbitrability' in order to manifest [a] 'clear and unmistakable' agreement." *Caldwell,* 2019 WL 1445220 at *4 (quoting *Dotson,* 472 S.W.3d at 604). "A delegation provision that gives an arbitrator the authority to resolve disputes relating to the enforceability, validity, or applicability of an arbitration agreement constitutes clear and unmistakable evidence that the parties intended to arbitrate arbitrability." *Id.* (quoting *Dotson,* 472 S.W.3d at 606). In *Pinkerton,* for example, reference in the agreement that the arbitration proceedings would be governed by the AAA commercial rules was sufficient to establish the parties' intent to incorporate those rules into the

agreement. 531 S.W.3d at 48.[7] In turn, those rules provided that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Id*. at 41. This was held to be clear and unmistakable evidence of the parties' intent to delegate threshold issues of arbitrability to the arbitrator. *Id.* at 48; *see also Latenser*, 549 S.W.3d at 464; *Caldwell*, 2019 WL 1445220 at \*4. In the present case, the parties' agreement similarly incorporated the AAA Rules, including Consumer Arbitration Rule R-14(a), which states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." This is identical to the provision at issue in *Pinkerton*, *Caldwell*, and *Latenser*, and we too must find that Plaintiffs and Ancestry clearly and unmistakably demonstrated an intent to delegate threshold issues of arbitrability to the arbitrator.

Having found the existence of a delegation provision, we must next determine its validity. *See Soars*, 563 S.W.3d at 114; *Dotson*, 472 S.W.3d at 608; *Caldwell*, 2019 WL 1445220 at \*4; *Latenser*, 549 S.W.3d at 463-64. "A delegation provision may be invalidated, revoked, or otherwise found unenforceable upon such grounds as exist in law or in equity for the revocation of any contract." *Caldwell*, 2019 WL 1445220 at \*4 (citing *Soars*, 563 S.W.3d at 114). "However, because a delegation provision is an additional arbitration agreement, the delegation provision is severable and should be considered separately from the underlying arbitration agreement." *Id*. (citing *Soars*, 563 S.W.3d at 114). "For [a party] to properly contest the validity of the delegation

---

[7] Missouri courts have found that "'[t]erms not explicit in a contract may be incorporated into the contract by reference' so long as the 'intent to incorporate [is] clear.'" *Pinkerton*, 531 S.W.3d at 45 (quoting *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 810-11 (Mo. banc 2015)). Parties may incorporate terms from another document, even one that is separate and unsigned, if the contract makes clear reference to the document and describes it so that it can be recognized beyond a doubt. *Id*. "There is no requirement that an incorporated document be attached to the contract or provided to the parties prior to the execution of the contract." *Id*.

provision, [it] must have challenged the delegation provision specifically. Otherwise it is treated as valid and enforced – 'leaving any challenge to the validity of the Agreement as a whole for the arbitrator.'" *Soars*, 563 S.W.3d at 114 (quoting *Rent-A-Ctr.*, 561 U.S. at 72) (additional citations omitted). "A direct challenge is one that specifically addresses the delegation provision." *Latenser*, 549 S.W.3d at 464 (citation omitted).

Before the trial court, Ancestry argued that the parties had agreed to delegate issues of arbitrability to the arbitrator. In response, Plaintiffs did not specifically challenge the delegation provision. Instead, Plaintiffs rested upon the same arguments they directed at the arbitration agreement as a whole;[8] an approach that has been specifically rejected by our courts. *See Soars*, 563 S.W.3d at 114. Because Plaintiffs failed to separately contest the validity of the delegation provision, it must be "treated as valid and enforced."[9] *Id.*

Point III is granted.

---

[8] Plaintiffs focus their argument on whether there was sufficient consideration for the formation of the entire arbitration agreement, relying on *Caldwell v. UniFirst Corp.*, 2018 WL 4568885 (Mo. App. E.D. September 25, 2018) (transferred to Mo. Sup. Ct. on January 29, 2019) ("*Caldwell I*"). In *Caldwell*, the plaintiff argued, like Plaintiffs do here, that the arbitration agreement lacked consideration because the defendant maintained a unilateral right to amend the agreement. 2018 WL 4568885 at *5-6. In *Caldwell I*, the eastern district of this Court agreed, finding that the arbitration agreement as a whole lacked consideration and, because the delegation provision was part of the arbitration agreement, neither was enforceable. *Id.* at *8. While the instant appeal was pending, the Missouri Supreme Court handed down *Soars*, which held that a delegation provision is "severable and should be considered separately from the underlying arbitration agreement." 563 S.W.3d at 114. Our Supreme Court re-transferred *Caldwell* to the eastern district for reconsideration in light of *Soars*. In *Caldwell II*, the eastern district examined the delegation provision in isolation and found that it was supported by sufficient consideration and the plaintiff's "challenges to the validity and enforceability of the agreement as a whole, including his contention that the arbitration agreement itself lacked consideration, are for the arbitrator." 2019 WL 1445220 at *4. Our decision today is consistent with *Soars* and *Caldwell II*.

[9] Even if a proper challenge specific to the delegation provision had been made by Plaintiffs, the outcome of this appeal would not change. "A contract consisting of mutual promises to undertake a legal duty or liability between parties is a bilateral contract." *Soars*, 563 S.W.3d at 116 (citation omitted). When we consider the delegation provision applicable to this matter in isolation, as we are required to do, it is clear that the parties mutually agreed to arbitrate questions of arbitrability. Thus, the agreement is bilateral and supported by consideration. *See Caldwell*, 2019 WL 1445220 at *4 (citing *Soars*, 563 S.W.3d at 117).

## IV.     Conclusion

The judgment of the circuit court is reversed and remanded with directions to stay the litigation and order the parties to proceed to arbitration where issues of arbitrability can be addressed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.